534 So.2d 1038 (1988)
Robert OLIVER, administrator of the estate of Ollie Oliver, deceased
v.
Elton TOWNSEND, in his capacity as sheriff of Winston County, and Aetna Casualty and Surety Company.
Robert OLIVER, administrator of the estate of Ollie Oliver, deceased
v.
T. Malcolm BLAKE. Robert OLIVER, administrator of the estate of Ollie Oliver, deceased
v.
WINSTON COUNTY COMMISSION, Cullman County Commission, and Wendell Roden, in his capacity as sheriff of Cullman County.
86-587, 85-1066 and 86-433.
Supreme Court of Alabama.
September 30, 1988.
*1039 James C. King of Wilson & King, Jasper, and Richard S. Jaffe of Jaffe, Burton & Digiorgio, Birmingham, for appellant.
Walter Joe James, Jr., of James & Lowe, Haleyville, for appellees Elton Townsend and Aetna Cas. & Sur. Co.
Morris W. Savage of Bankhead & Savage, Jasper, for appellee T. Malcolm Blake.
Hobson Manasco, Jr., Haleyville, for appellee Winston County Com'n.
Steve A. Baccus and Larry B. Moore of Almon, McAlister, Ashe, Baccus & Tanner, Tuscumbia, for appellees Cullman County Com'n and Wendell Roden.
PER CURIAM.
These three cases were consolidated on appeal from the Circuit Court of Winston County. Ollie Oliver[1] died of hepatitis. After his death, Robert Oliver, administrator of the estate of Ollie Oliver, sued Dr. T. Malcolm Blake, the county commissions of Cullman and Winston Counties, the sheriffs of Cullman and Winston Counties, and the surety company that had provided the Winston County sheriff's bond.
The facts of this case are not complicated. Ollie was in custody in Cullman County following his conviction on a burglary charge. He was transferred to the Winston County jail to face similar charges in *1040 that county. While he was in the Winston County jail, Ollie complained of an illness. Sheriff's deputies took Ollie to Dr. Blake, who diagnosed a kidney disease and prescribed medication for it. Dr. Blake saw Ollie six times, from September 9, 1980, through October 1, 1980. On his final visit to see Dr. Blake, Ollie apparently exhibited the jaundiced skin and eyes symptomatic of hepatitis. Dr. Blake recommended hospitalization. Ollie was returned to Cullman County authorities that day, and they took him to Kilby State Prison Hospital. Ollie died three days later.
Robert Oliver's suit claimed negligent or wanton treatment by Dr. Blake, negligent or wanton supervision or actions by the various law enforcement authorities involved, and a denial of Ollie's rights by all parties so as to support a claim under 42 U.S.C. § 1983. The trial judge eventually granted summary judgment as to all defendants, and Robert Oliver brought these three appeals.

I
We first turn to the plaintiff's claims against Dr. Blake. In two counts of his complaint the plaintiff alleges causes of action against Dr. Blake. First, he claims that Dr. Blake "negligently and/or wantonly treated or cared for the plaintiff's decedent." Second, he claims that Dr. Blake's actions combined and concurred with the acts of the other defendants to deprive Ollie of his civil rights under color of state law and he seeks damages under 42 U.S.C. § 1983.
Our standard of review on an appeal from summary judgment is well settled. Summary judgment is proper only if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. If there is a scintilla of evidence supporting the position of the non-moving party, summary judgment can not be granted. Cole v. First National Bank of Tuskaloosa, 485 So.2d 717, 719 (Ala.1986). A scintilla has been defined as a "mere gleam, glimmer, spark, the least particle, the smallest trace." Howard v. Crowder, 496 So.2d 31, 32 (Ala.1986).
Dr. Blake moved for summary judgment on May 14, 1984, and filed a supporting affidavit with his motion averring generally that he had exercised the same reasonable care, skill, and diligence that doctors in the same general neighborhood and in the national medical neighborhood would have exercised under the same conditions.
On August 3, 1984, the day the summary judgment motion was set for hearing, the plaintiff filed a motion in opposition to the summary judgment and attached the affidavit of Dr. Morton Meltzer in support of his motion. The supporting affidavit was not signed by Dr. Meltzer. At the hearing, the trial court gave the parties seven days to file briefs. On Friday, August 10, 1984, Oliver's attorney filed a brief that included the following:
"As before mentioned and as mentioned at the hearing on August 3, 1984, the affidavit of Dr. Morton Meltzer is initially filed unsigned and is in transit from Dr. Meltzer's office to the Plaintiff's attorney's office. Rules 56(a) and (f) provide reasonable means of allowing the supplemental attachment of the signed affidavits or, in the alternative, to allow the plaintiffs to obtain a signed affidavit. The Plaintiff has, however, made an offer of proof to the Court that the signed affidavit is on its way. It is noted that the Plaintiff requested that the motions for summary judgment hearing be set on a date other than August 3, 1984. (see Exhibit A) The request was made, in part, to allow the signed affidavit to be received in order to be attached."
The Exhibit A mentioned is a letter to the trial judge dated July 17, 1984, requesting a September setting of the hearing, but not giving any specific reason for the request that it not be scheduled for August 3.
Also on August 10, Dr. Blake filed a motion to strike Dr. Meltzer's unsigned affidavit. The record includes a response by Oliver's attorney to this motion that is marked as having been dictated on August *1041 11, transcribed on August 13, and filed on August 14. The response reads:
"In this morning's mail, Saturday, August 11, 1984, I received Morris Savage's documents in regard to the motion for summary judgement. On today's date, I had a conversation on the telephone with Dr. Morton Meltzer wherein he advised me that the signed affidavit together with some other documents had been mailed to my office. I checked my mail this morning, and they were not in there. I believe that those documents will appear in the mail Monday or Tuesday, and again, I am making this known to the Court as an offer of proof that the signed document is available and but for problems with the mail, would have been available at the time of the hearing on the motion for summary judgement.
"I am further making an offer of proof that Dr. Meltzer can be available for live, in-court testimony with regard to his facts and opinions which could not have been rendered until the taking of all of the depositions that have been taken in order to give him a substantial basis of fact upon which to base his opinion.
"I would further point out to the Court that at no time has Dr. T. Malcolm Blake, by and through his attorney, sent requests for production of documents or interrogatories requesting the designation of and the identity under Rule 26 of Plaintiff's expert witness in this case.
"For the foregoing reasons, as well as the reasons previously cited in the letter brief dated August 10, 1984, Plaintiff respectfully requests that the motion for summary judgement filed by Dr. T. Malcolm Blake be denied or, in the alternative, that the motion for summary judgement be continued until such time as additional testimony of Dr. Morton Meltzer could be placed into the record.
"P.S. Enclosed is a copy of the signed affidavit of Dr. Morton Meltzer which came in the Monday, August 13, 1984, mail."
A signed and notarized copy of Dr. Meltzer's affidavit follows in the record, and it is the same affidavit that was filed unsigned at the hearing.
The court made no ruling on this controversy at the time. Instead, the next entry in the record is an order signed by the trial court on August 31, 1984, stating: "By agreement of the parties the above referenced case is continued generally from the trial setting of September 10, 1984."
The next significant entry in the record is a motion for protective order served on April 30, 1986, and filed on May 2, by the Winston County Commission. The motion stated that the deposition of Dr. Meltzer had been scheduled for May 10, 1986, in Cameron, North Carolina, and requested a continuance of that deposition on the ground that the Commission's pending motion for summary judgment "is a meritorious motion and, if granted by this court, would be dispositive of this case as to the Defendant, Winston County Commission."
On April 30, 1986, the court ordered that the deposition of Dr. Meltzer "shall not be taken on Saturday, May 10, 1986, but rather shall be continued to a later date." On May 1, the trial court entered a summary judgment for the Winston County Commission, stating simply "that there is no genuine issue as to any material fact and that the Defendant, Winston County Commission, is entitled to a judgment as a matter of law."
On May 5, 1986, the court entered the following judgment in favor of Dr. Blake:
"This cause coming on to be heard on the Motion for Summary Judgment of the defendant, Dr. T. Malcolm Blake, and the Court having heard the arguments of counsel for the respective parties, reviewed the contents of the Court file and reviewed the affidavit of the defendant and the unexecuted counter-affidavit on behalf of the plaintiff, finds that the plaintiff has not presented any expert medical testimony as to what was or was not the proper practice, treatment or procedure and has not demonstrated that his case falls within the exception of the rule requiring expert medical testimony and, therefore, has failed to establish the existence of a genuine issue of material fact and that, accordingly, the *1042 Motion for Summary Judgment is due to be granted, and the defendant, Dr. T. Malcolm Blake, is entitled to a judgment as a matter of law.
"IT IS, THEREFORE, THE ORDER, JUDGMENT AND DECREE OF THE COURT That the Motion for Summary Judgment of Dr. T. Malcolm Blake be and the same is hereby granted, and the defendant, Dr. T. Malcolm Blake, is dismissed with prejudice, and the plaintiff shall have and recover nothing from him.
"It is determined by the Court that there is no just reason for delay and it is expressly directed that this judgment be entered as a final judgment under the provisions of Rule 54(b) of the Alabama Rules of Civil Procedure."
(Emphasis added.) Clearly, the trial court did not consider the affidavit of Dr. Meltzer in granting summary judgment for Dr. Blake.
Rule 56(f), A.R.Civ.P., states:
"(f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
Although Robert Oliver's attorney did not file an affidavit stating the facts he recited in his August 10 brief and in his response to Dr. Blake's August 10 motion and brief, those filings satisfied the requirements of Rule 56(f) because the attorney is an officer of the court and because of the following provisions of Rule 11, A.R. Civ.P.:
"The signature of an attorney constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay. If a pleading, motion or other paper is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading, motion or other paper had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."
We do not mean to imply that substantive facts can be established simply by an attorney's signature on a brief. The matters represented here relate only to procedural matters not otherwise reflected in the recordi.e., the July 17 letter was simply mailed to the judge, not filed, and the August 3 hearing was not transcribed. Even aside from these after-the-fact attempts to reconstruct that plaintiff had established before or at least during the hearing that he could not then, but soon would be able to, "present by affidavit facts essential to justify his opposition," we hold that his brief filed on August 10 and his response and Dr. Meltzer's affidavit filed on August 14 constituted timely compliance with Rule 56(f), at least because the representations regarding attempts to procure the affidavit were undisputed, because the trial court did not immediately exclude the sworn affidavit or rule on the summary judgment motions, and because the summary judgment motions remained pending for another 20 months.
Because of our holding that Robert Oliver effectively complied with Rule 56(f), and because of the long delay between the submission of Dr. Meltzer's signed affidavit and the granting of summary judgment, Osborn v. Johns, 468 So.2d 103 (Ala.1985), and Guess v. Snyder, 378 So.2d 691, 693 (Ala. 1979), are distinguishable from this case.
For the foregoing reasons, the trial court erred in granting summary judgment for Dr. Blake solely on the ground that Robert Oliver presented only an unexecuted affidavit at the August 3, 1984, hearing.
Dr. Meltzer's affidavit recited his credentials, which at least prima facie indicated his qualification as an expert in this matter, and his review of and findings from the documents and records, including a finding that Dr. Blake did no blood studies *1043 on Oliver. In its conclusion, the affidavit reads:
"Based upon the review of the foregoing records and my findings regarding said records, it is my opinion that Dr. Malcolm Blake did not properly treat Olie [sic] Oliver and failed to properly diagnose the hepatitis condition from which Olie Oliver ultimately died. It is further my opinion that Dr. Malcolm Blake did not exercise a reasonable and normal standard of care in treating Olie Oliver. At a minimum, Dr. Blake should have ordered further tests to complete his diagnosis and establish why Oliver was not getting better. At a minimum, Dr. Blake should have immediately placed Olie Oliver in the hospital for treatment on the evening of September 30, 1980. It is further my opinion that if Dr. Blake had the history from Olie Oliver or information from any of the persons associated with Olie Oliver, that Olie Oliver was jaundiced either in his skin color or eyes, that he should have taken the necessary steps to treat and diagnose Olie Oliver for hepatitis. It is my opinion that hepatitis of the type from which Olie Oliver died is not always fatal. Hepatitis such as that from which Olie Oliver died becomes fulminant or death producing if it is allowed to go untreated. There is treatment for hepatitis which includes bedrest, good diet, [and] fluid balancing, none of which appears to have been done for Olie Oliver until his transfer from Winston County. In fulminant cases, sometimes total blood transfusions or blood replacements are necessary treatments. It is my opinion that Dr. Malcolm Blake failed to exercise the standard of care that a family practitioner practicing in the United States of America should have exercised in regard to the facts and circumstances and conditions surrounding Olie Oliver and his ultimate death. It is my opinion that Dr. Malcolm Blake did not exercise reasonable care, diligence, and skill as doctors practicing family practice in the national medical neighborhood and the same general neighborhood ordinarily have and exercise in a case such as the one involving Olie Oliver."
This affidavit presents a genuine issue as to material facts, and Dr. Blake was not entitled to judgment as a matter of law. Rule 56(e), A.R.Civ.P. See, e.g., Timmerman v. Fitts, 514 So.2d 907 (Ala.1987). Therefore the trial court erred in granting summary judgment for Dr. Blake on the first claim against him, which is, in effect, a claim under the Medical Liability Act.

II
We next turn to the claim against Dr. Blake under 42 U.S.C. § 1983. That section states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
The plaintiff cites Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), as authority for his position that a § 1983 action can be maintained for the denial of adequate medical care to a prisoner. We agree. In West v. Atkins, ___ U.S. ___, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Supreme Court of the United States stated: "We now make explicit what was implicit in our holding in Estelle: Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of section 1983 when undertaking his duties in treating petitioner's injury." The Court held that "[s]uch conduct is fairly attributable to the State." Therefore, the trial court erred in granting summary judgment on this claim, also.

III
We next turn to the plaintiff's claims of negligence and wantonness *1044 against the Cullman and Winston County Commissions and against the sheriffs of Cullman and Winston Counties. These claims were properly decided by summary judgment. A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is an executive officer of the State of Alabama, and is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office, with certain exceptions. Parker v. Amerson, 519 So.2d 442 (Ala.1987). None of the claims here stated fall within any of the exceptions. The negligent performance of a statutory duty does not operate to remove the § 14 shield of immunity. Gill v. Sewell, 356 So.2d 1196, 1198 (Ala.1978). We also note that this Court in Parker specifically held that civil liability may not be imposed on a sheriff for the acts of a jailer appointed by the sheriff. Parker, at 443.

IV
We next turn to the plaintiff's claims against defendants Cullman County Commission and the sheriff[2] of Cullman County under 42 U.S.C. § 1983. The plaintiff claims that the sheriff failed to properly execute his duties and that this failure led to Ollie's death; that the sheriff and the Cullman County Commission negligently and/or wantonly transferred Ollie from Cullman County to Winston County without legal authority or not in accordance with ordinary procedures and that this action proximately caused his death; and, that these defendants' actions in transferring Ollie violated his civil rights under color of state law and subject them to liability under 42 U.S.C. § 1983.
On motion for summary judgment, the facts will be construed in the light most favorable to the non-moving party. Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981). The plaintiff asserts that the following facts, construed in the light most favorable to him, create a scintilla of evidence in support of his position.
First, the plaintiff alleges that Ollie's transfer by these defendants was only an attempt to move a "sick" prisoner so that they would not have to pay his health care costs. We have examined the record and we do not find a scintilla of evidence to support this contention. The mere fact that Ollie had been transferred to Lawrence County and then later transferred to Winston County is not a scintilla of evidence that these Cullman County defendants were trying to get rid of him for monetary reasons. The evidence is uncontradicted that there were outstanding warrants for Ollie in both Lawrence and Winston Counties and that his transfer took place under usual procedures.
Second, the plaintiff claims that Ollie contracted hepatitis from a tattoo he was given in the Cullman County jail. We do not find a scintilla of evidence that he received a tattoo while in the Cullman County jail or while he was in the custody of the Cullman County sheriff. The only direct testimony on this point is that Ollie did not have a tattoo when he left Cullman County to go to Winston County and that no one in the Cullman County jail had ever seen or heard of anyone giving or receiving tattoos there. The only evidence offered to show that Ollie got the tattoo in Cullman County was the testimony of Sheriff Townsend of Winston County that he had never seen, nor heard of, prisoners in Winston County giving or receiving tattoos. In addition, no evidence was presented to show that the tattoo caused the hepatitis. We hold that there was not a scintilla of evidence in support of the plaintiff's position.
Third, the plaintiff contends that Ollie was improperly transferred to Winston County, citing the testimony of Ed Townsend, a Winston County sheriff's deputy. But in his deposition, Townsend testified only that to his knowledge there was no solicitation for Ollie's transfer. The undisputed evidence is that there was an outstanding warrant for Ollie's arrest in Winston County and that when Cullman County *1045 officers discovered this fact they contacted Winston County authorities and delivered Ollie to them. One Cullman County deputy testified that Ollie was transferred in accordance with usual procedures. We hold that the statement of one Winston county deputy that he did not know a particular prisoner was being transferred is not sufficient to create a genuine issue as to any material fact in this case.
Fourth, the plaintiff contends that these defendants caused unnecessary delays in transporting Ollie to the hospital and that these delays proximately caused his death. The uncontradicted testimony was that Ollie was brought to Cullman County from Winston County after Dr. Blake recommended that he be put in the hospital. The testimony was that Ollie was not even taken into the Cullman County jail, but was transferred directly from a Winston County car to a Cullman County car and driven to Kilby State Prison Hospital. The uncontradicted medical testimony before the trial judge was that a delay of three to four hours in hospitalizing Ollie was inconsequential. We find no evidence in the record that Cullman County denied Ollie's civil rights by delaying his hospitalization.
Fifth, the plaintiff contends that evidence before the trial judge shows that Ollie was suffering from hepatitis before he left the Cullman County jail. The plaintiff apparently bases this contention on deposition testimony of Cullman County Deputy Sheriff Brian Bulger:
"Q. Now, in the last paragraph in your affidavit you say, quote, as long as I have been working in the Cullman County Jail, there has never been a case of hepatitis in the jail. When Oliver was released to Winston County, he did not have hepatitis.
"Tell me how you made that determination....
"A. No doctor has ever told me that.
"Q. Well, the last sentence, when Oliver was released to Winston County Jail, he did not have hepatitis. Tell me how you made that statement.
"A. He did not have the physical symptoms that I am familiar with at that time.
"Q. Okay. What are the physical symptoms for hepatitis?
"A. According to what a doctor told me, yellowish, yellow eyes, runny nose, sweating.
"Q. What else if anything?
"A. That's basically what I can remember. The yellow eyes, especially under here and in the eyeball itself, instead of being white, are yellow.
"Q. Well, when you made this statement that when Ollie Oliver was released to Winston County he did not have hepatitis, that's an opinion, is it not, Officer Bulger?
"A. You asked me for an opinion.
"Q. No. I'm asking you about this statement. That's your opinion?
"A. That's right.
"Q. And you're not a doctor?
"A. That's right.
"Q. Have you ever diagnosed hepatitis in your life?
"A. Never.
"Q. Do you know what other symptoms may be associated with the disease of hepatitis?
"A. No.
"* * * *
"Q. So when you make the statement, when Oliver was released to Winston County he did not have hepatitis, you really don't know medically whether he had it or not. That was your opinion?
"A. That's correct."
The plaintiff has shown only that the officer could not prove Ollie did not have hepatitis. But this is not sufficient. No scintilla of evidence is offered to rebut the deputy's statement that Ollie did not have symptoms of hepatitis. Additionally, the plaintiff does not answer the testimony of employees of the Winston County sheriff's department that when Ollie arrived there from Cullman he did not appear to be sick. Even viewing the evidence in the light most favorable to the plaintiff, we do not find a scintilla of evidence that Ollie's civil rights were denied in Cullman County. *1046 Summary judgment was therefore proper as to the plaintiff's § 1983 claims against the Cullman County defendants.
In summary, we do not find a scintilla of evidence in the record that either the Cullman County sheriff or the Cullman County Commission acted negligently or wantonly in transferring Ollie to Winston County; we do not find a scintilla of evidence that these defendants were negligent in their supervision of Ollie while he was in Cullman County; and we do not find a scintilla of evidence that Ollie's civil rights to proper medical care was denied by these defendants so as to subject them to liability under 42 U.S.C. § 1983. The judgment of the trial court as to these two defendants is due to be affirmed.

V
We turn now to the plaintiff's claims against the Winston County Commission under 42 U.S.C. § 1983.
The parties spent much effort in their briefs arguing whether the trial judge entered a proper final judgment as to the Winston County Commission under the provisions of Rule 54(b), A.R.Civ.P. Although no proper Rule 54(b) order was entered in this case as to the Winston County Commission, after the summary judgment in its favor all other claims as to all other parties were eventually disposed of. Claims adjudicated in a previous non-final order become final, and therefore subject to appeal, at the time the last party or claim is disposed of. Morton v. Chrysler Motors Corp., 353 So.2d 505 (Ala.1977). The appeal as to the Winston County Commission is properly before this Court.
In his complaint, the plaintiff stated the following:
"1. This action arises under Tit. 42, U.S.C., § 1983.
"2. In and during the months of July, August, September, and October of 1980, Plaintiff's decedent, Ollie Oliver, was imprisoned in the Cullman County Jail and [he was] subsequently, unlawfully, and illegally transferred to the Winston County Jail.
"3. While being imprisoned in the Winston County Jail, Plaintiff's decedent was subjected to an unhealthy and unwholesome environment, and improperly supervised as were other prisoners in the same detention area, and was not provided with adequate medical care and treatment.
"4. The actions of the Defendants, Aetna Life Insurance Company, Winston County Commission, High Sheriff Elton Townsend of Winston County, Alabama, Cullman County Commission, High Sheriff Buell R. Graves of Cullman County, Alabama, Dr. T. Malcolm Blake, M.D., and Defendant Nos. 1 through 6 (hereinbefore described in the caption) in negligently and/or wantonly transferring or allowing Plaintiff's decedent to be transferred from the Cullman County Jail to the Winston County Jail and/or negligently and/or wantonly failing to provide proper supervision of Plaintiff's decedent and/or negligently and/or wantonly failing to provide adequate medical care and treatment of Plaintiff's decedent and/or negligently and/or wantonly subjecting the Plaintiff's decedent to an unhealthy and unwholesome environment while acting under color of law all combining and concurring constituted violation of the Plaintiff's decedent's rights under the Fourth [sic] and Fourteenth Amendments to the Constitution of the United States of America, and further were violative of the express provisions under Tit. 42 of the United States Code, § 1983."
We hold that the plaintiff presented no scintilla of evidence that the Winston County Commission violated the civil rights of Ollie Oliver so as to expose it to liability. The plaintiff strenuously argues that he has presented such a scintilla.
We hold that the summary judgment in favor of the Winston County Commission was proper, because no evidence was presented to show that any direct actions of the commission proximately resulted in harm to Oliver. The commission submitted the affidavit of Hollis Cagle, chairman of the commission, in support of its motion for *1047 summary judgment. That affidavit reads, in pertinent part:
"The Winston County Commission appropriates funds for the Winston County Sheriff's Department to operate. The Winston County Commission has no supervisory or regulatory authority, either actual or legal, over the Winston County Sheriff's Department or the Winston County Jail. The Winston County Commission has no authority and exercises no authority concerning how the funds appropriated to the Winston County Sheriff's Department are used within the Sheriff's office."
No evidence was offered by the plaintiff to rebut this assertion. Once the movant has carried his burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law, the burden shifts to the non-moving party to show, by admissible evidence, the existence of a genuine issue of material fact. Horner v. First National Bank of Mobile, 473 So.2d 1025, 1028 (Ala.1985). The plaintiff here showed only that the Winston County Commission funded the sheriff's department. No allegation is made, and no scintilla of evidence was presented to indicate, that the commission had any control over the operation of the department. As we have already stated elsewhere in this opinion, no cause of action against a county commission can be based on a respondeat superior theory that is based on actions of the county sheriff. See Part III; Parker v. Amerson, supra. The summary judgment in favor of the Winston County Commission on this claim is therefore due to be affirmed.

VI
Last, we turn to the plaintiff's claims against Sheriff Elton Townsend under 42 U.S.C. § 1983 and his claim against Aetna Casualty and Surety Company.[3] We note that there is some procedural confusion as to a party involved in this appeal. The original complaint named Aetna Life Insurance Company, as the issuer of a bond on Elton Townsend. When the plaintiff discovered that Aetna Life Insurance Company had not issued a bond on Townsend, the plaintiff amended the complaint to name as a defendant Aetna Casualty and Surety Company, which had issued such a bond. Aetna Life Insurance Company was dismissed. However, in the trial judge's order granting summary judgment for Townsend and Aetna he referred to Aetna Life Insurance Company. He corrected his error pursuant to Rule 60(a), A.R.Civ.P. The plaintiff makes strenuous arguments about the propriety of this change. We hold that the error was exactly the sort of clerical mistake that Rule 60(a) was intended to provide a remedy for. We do not find any merit in the plaintiff's argument that the correction was improper.
We nonetheless reverse the summary judgment as to Aetna and Sheriff Townsend. Viewing the evidence in the light most favorable to the plaintiff, we find a scintilla of evidence from which a trier of fact could infer that Ollie was deprived of his civil rights and that the plaintiff could recover damages pursuant to 42 U.S.C. § 1983. The record reveals that Virginia Dennis was an employee of the Winston County sheriff's department when Ollie was held there and that she was responsible for distributing medication to prisoners. In deposition, Dennis examined certain documents from the sheriff's office and testified that, according to those records, on several occasions Ollie had not been given the medication prescribed by Dr. Blake. Viewed in the light most favorable to the plaintiff, it would appear that Ollie was to receive his medicine four times a day but was given it only once a day, if at all.
The U.S. Supreme Court has held that denial of medical care will support a claim under 42 U.S.C. § 1983:
"We therefore conclude that deliberate indifference to serious medical needs of *1048 prisoners constitutes the `unnecessary and wanton infliction of pain,'. . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."
Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). See also Ala.Code 1975, § 36-5-18; Dixon v. American Liberty Ins. Co., 332 So.2d 719 (Ala. 1976).
We hold that the plaintiff has produced a scintilla of evidence that Ollie was not given his medication. The summary judgment granted in favor of Townsend and Aetna was, therefore, improper, and we reverse.

VII
In summary, we hold that the trial judge properly granted summary judgment as to the claims against the Cullman County Commission, the Winston County Commission, and Cullman County Sheriff Wendell Roden. Summary judgment was also proper as to Sheriff Elton Townsend on the negligence and wantonness claims. However, we hold that the trial judge erred in granting summary judgment for Dr. Blake and for Sheriff Townsend and Aetna Casualty and Surety Company on the 42 U.S.C. § 1983 claim. The judgment is therefore affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., concurs in part, and dissents in part.
MADDOX, Justice (concurring in part; dissenting in part).
I concur in the opinion in all respects, except I cannot agree to reverse the summary judgment granted in favor of Dr. Blake, Case #85-1066.
The majority holds that the trial judge abused his discretion by refusing to allow the plaintiff to file a tardy affidavit in a medical malpractice case. Because the law states that a trial judge may consider a tardy affidavit when a proper Rule 56(f), Ala.R.Civ.P., request has been made, but that he is not required to do so, I must dissent. My reasons follow.
Dr. Blake moved for summary judgment on May 14, 1984, and filed a supporting affidavit with his motion, averring that he had exercised the same reasonable care, skill, and diligence that doctors in the same general neighborhood and in the national medical neighborhood would have exercised under the same conditions.
On August 3, 1984, the day the summary judgment motion was set for hearing, the plaintiff filed a motion in opposition to the summary judgment and attached the affidavit of Dr. Morton Meltzer in support of his motion. The supporting affidavit was not signed by Dr. Meltzer. On August 10, 1984, Dr. Blake filed a motion to strike the unsigned affidavit filed by plaintiff, and filed a brief in support of the motion. Plaintiff subsequently filed a properly executed affidavit on August 14, 1984, but the record fails to reflect that plaintiff, at any time before the hearing, asked the trial judge for a continuance in order to allow him to get a properly executed affidavit. In other words, plaintiff took no steps, as authorized by Rule 56(f), to preserve his legal rights. There is nothing in the record to show what, if anything, the plaintiff did between the date the motion for summary judgment was filedMay 14, 1984and the date of the hearingAugust 3, 1984. Because the action was in the nature of one for medical malpractice, the trial judge had a right to assume that plaintiff could produce an opposing affidavit at the time of the hearing, especially since medical testimony *1049 is necessary to prove medical malpractice.
While the trial judge could have considered the tardy affidavit if the plaintiff had submitted a proper Rule 56(f) request, the question is whether he erred by failing to consider the affidavit. I do not believe he erred. A properly executed affidavit was not filed until August 14, 1984, and the defendant doctor consistently insisted on his right to have his motion considered based upon the unsigned affidavit.
On appeal, the plaintiff argues that the Meltzer affidavit created a genuine issue of material fact as to his claims against Dr. Blake. Of course, the issue is whether the affidavit was properly before the trial judge at the time the motion was submitted. The law explicitly states that a trial court can consider only material that is before it at the time of the submission of the motion. In Osborn v. Johns, 468 So.2d 103 (Ala.1985), Mr. Justice Beatty, writing for the Court, in a factual setting similar to the one presented here, opined:
"Citizens Bank's motion for summary judgment was argued and submitted to the trial court based on Osborn's deposition and affidavit on October 1, 1981. The judgment in favor of Citizens Bank was entered October 29, 1981. Osborn filed his motion for reconsideration October 30, 1981, `pray[ing] that the depositions of Shirley Miller, Elizabeth Turner, and Jane Hartsook be published and considered by the Court in connection with this motion.' Plaintiff also filed another affidavit and attached several documents in support thereof. The depositions referred to in the motion were all filed prior to the trial court's decision (Turner's deposition was filed October 19, Miller's on October 23, and Hartsook's on October 27), but after the submission of the motion.
"This Court dealt with an identical situation in Guess v. Snyder, 378 So.2d 691 (Ala.1979), which involved a claim for medical malpractice. In opposition to the defendant doctor's motion for summary judgment, plaintiff filed an affidavit from her attorney to which was attached an unsworn letter from a Kentucky physician. This affidavit, like Osborn's herein, was insufficient under Rule 56(e). The motion for summary judgment was submitted March 2, 1978, on the affidavit of plaintiff's attorney and the evidence filed by the defendant. On March 9, plaintiff filed an additional opposing affidavit from the Kentucky physician. The trial court granted summary judgment for the defendant on March 14. Recognizing that `[t]he trial court can consider only that material before it at the time of submission of the motion' and that any material filed thereafter `comes too late,' this Court concluded that the affidavit of the Kentucky physician filed March 9 was `unquestionably untimely.' [Icardi v. National Equipment Rental, Inc.] 378 So.2d 113 (Ala.1978). Applying these principles to the present case, we find that none of the material referred to in Osborn's motion for reconsideration was properly before the trial court and, therefore, cannot be considered on appeal by this Court. See Ex parte Bagby [Elevator & Electric Co., 383 So.2d 173 (Ala. 1980)]."
Justice Bloodworth, writing for the Court in Guess v. Snyder, 378 So.2d 691, 693 (Ala. 1979), which is cited in Osborn, considered a case with facts which are strikingly similar, in that a sworn affidavit was not filed until after the motion for summary judgment had been heard and submitted. There, the Court, with Torbert, C.J., Faulkner, Almon, and Embry, JJ., concurring, stated:
"On this appeal, plaintiff contends that the material presented by defendant Dr. Snyder was insufficient to support a motion for summary judgment. Plaintiff's contention is that both Dr. Snyder, who answered the interrogatories, and Dr. Connie Chandler, who executed a supporting affidavit, have an interest in the case, or are biased, and therefore should be subject to cross examination at trial in order for the jury to determine what weight to give their testimony. We cannot agree.
"Plaintiff's contention might have merit if plaintiff had supplied the court with a timely filed counter affidavit which *1050 raised a genuine issue as to a material fact. However, we consider that the trial court held that the affidavit supplied by plaintiff's attorney was insufficient under Rule 56(e), ARCP. Attached to the affidavit, was simply a letter from the Kentucky physician to the attorney with a `preliminary opinion' that Dr. Snyder had performed the operation negligently.
"The trial court can consider only that material before it at the time of submission of the motion. Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113 (Ala.1978); Engel Mortgage Co., Inc. v. Triple K Lumber Company, Inc., 56 Ala.App. 337, 321 So.2d 679 (1975).
"To like effect are the federal cases, interpreting FRCP 56. Any material filed after submission of the motion comes too late. In Re Yarn Process Pat. Valid. & Anti-Trust Litigation, 398 F.Supp. 31, 63 (S.D.Fla.1975), Fortner Enterprises, Inc. v. United States Steel Corp., 293 F.Supp. 762, 769 (W.D. Ky.1966).
"In this case, the only material before the trial court at time of submission was Dr. Snyder's answers to interrogatories and Dr. Chandler's affidavit, both of which supported Dr. Snyder's motion for summary judgment. Plaintiff had no material on file to oppose Dr. Snyder's motion, except the unsworn hearsay letter from the Kentucky physician. The affidavit filed March 9 was unquestionably untimely. The cause had already been submitted to the court on March 2. Thus, we do not know whether the trial court was even aware of the tardy affidavit. Engel Mortgage Co., Inc. v. Triple K Lumber Company, supra. We judicially know that March 9, 1979, was a Friday. We also know the judgment was dated March 14, the following Wednesday. It is very likely that the trial judge did not know of the filing of the tardy affidavit when he made his ruling. Certainly, the duty fell on the plaintiff's attorney to timely file and present his supporting papers." (Emphasis added).
378 So.2d at 692-93.
In his order in this case, the trial judge stated that, although he reviewed the unsigned affidavit of Dr. Meltzer, he did not consider it in making his ruling:
"This cause coming on to be heard on the Motion of the defendant, Dr. T. Malcolm Blake, and the Court having heard the arguments of counsel for the respective parties, reviewed the affidavit of the defendant and the unexecuted counter-affidavit on behalf of the plaintiff, finds that the plaintiff has not presented any expert medical testimony as to what was or was not the proper practice, treatment or procedure and has not demonstrated that his case falls within the exception of the rule requiring expert medical testimony and, therefore, has failed to establish the existence of a genuine issue of material fact and that, accordingly, the Motion for Summary Judgment is due to be granted, and the defendant, Dr. T. Malcolm Blake, is entitled to a judgment as a matter of law."
Professor Moore points out the appropriate procedures in cases when affidavits are unavailable.
"A typical situation for the application of Rule 56(f) is where the opposing party cannot then present by affidavits facts essential to justify his opposition, because knowledge of these facts is exclusively with or largely under the control of the moving party. In such a situation the opposing party should present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts. The mere averment of exclusive knowledge or control of the facts by the moving party is not adequate: the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures. The court may then order a continuance to permit discovery, or deny the motion for summary *1051 judgment without prejudice to its renewal after adequate time has elapsed to obtain the desired information."
6 Moore's Federal Practice, part 2, para. 56.24, at 1430-33.
I cannot find that the trial judge abused his discretion by refusing to consider the unexecuted affidavit. This is a medical malpractice action, and plaintiff should have known from the time the action was filed that he would have to present a medical expert's testimony that the defendant doctor was negligent. The record affirmatively shows that plaintiff's counsel had almost three months after Dr. Blake's motion for summary judgment was filed to obtain some evidence that what Dr. Blake did was negligent. He did not produce any evidence to this effect at the time the motion was submitted (the date the trial judge held the hearing). This record does not show why plaintiff waited until after the hearing on the motion to get a signed affidavit.
I do not believe that the trial judge's two year delay in ruling changes the rule in this case. Plaintiff filed multiple claims, involving multiple parties in this case, and a prompt ruling on the defendant's motion for summary judgment would not have been final (and therefore appealable), unless of course, the trial judge gave a Rule 54(b) certification of finality. If the trial judge had considered the tardy affidavit and denied the defendant doctor's motion for summary judgment, that ruling would not have been appealable either. In that event, the defendant doctor, in order to obtain a review by this Court, would have had to request permission to appeal under Rule 5(a), Ala.R.App.P.
The law regarding summary judgment and the requirements of supporting and opposing affidavits is clear. Rule 56(e), A.R.Civ.P. provides, as follows:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."
In Welch v. Houston County Hospital Board, 502 So.2d 340 (Ala.1987), this Court discussed the sufficiency of evidence under Rule 56(e):
"While Rule 56, A.R.Civ.P., permits evidence in the form of depositions and answers to interrogatories to be submitted in support of, or in opposition to, a summary judgment motion ... that evidence must, nevertheless, conform to the requirements of Rule 56(e) and be admissible at trial.... That is, the content of the deposition or answers to the interrogatories must be asserted on the personal knowledge of the deponent or person giving the answers, must set forth facts that would be admissible in evidence, and must show affirmatively that the deponent or person giving the answers is competent to testify to the matters asserted.... These requirements are mandatory.... Matters stated based only upon information and belief are essentially hearsay and are, therefore, insufficient."
502 So.2d at 342. (Emphasis in Welch.)
Dr. Blake's affidavit in this case made a prima facie showing that he was entitled to a judgment as a matter of law. The burden then shifted to the plaintiff, and he, by presenting only an unexecuted affidavit, failed to rebut Dr. Blake's prima facie showing. Rule 56(e), Ala.R.Civ.P. Expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. Gilbert v. Campbell, 440 So.2d 1048, 1049 (Ala.1983). No expert medical testimony existed in support of the plaintiff's position at the time the motion was submitted. The trial judge specifically held that this case did not fall under any of the exceptions to this rule, and I agree. See Holt v. Godsil, 447 So.2d 191, 192 (Ala.1984).
If a proper Rule 56(f) request had been made, the trial judge, in the exercise of his *1052 sound discretion, could have chosen to refuse the application for judgment or could have ordered a continuance, but the law, until today, did not require him to do so. Rule 56(f) Ala.R.Civ.P. provides the appropriate method for a party in this situation.
"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery had or may such other order as is just." (Emphasis added.)
The plaintiff in this case did not present any affidavits that stated reasons for not presenting Dr. Meltzer's signed affidavit. The majority holds that the plaintiff "effectively complied" with Rule 56(f); I do not agree.
In Crowder v. Correctional Medical Systems, 497 So.2d 486, 489 (Ala.1986), this Court stated:
"A careful review of the record reveals that Crowder never filed an affidavit stating the reasons for his failure or inability to obtain facts essential to justify his opposition, as mandated by 56(f). The trial court did not abuse its discretion in denying Crowder another continuance of the summary judgment hearing."
In this case, there is nothing in the record to show that a proper request was made of the trial judge pursuant to the provisions of Rule 56(f), therefore, I would uphold the trial judge's grant of summary judgment and refusal to accept the tardy affidavit.
NOTES
[1] We note that various spellings for this person's first name are used throughout the record in this case. "Ollie" is the spelling he used on a handwritten note to an employee of the Winston County jail, and it is therefore the one we adopt for this opinion.
[2] The complaint originally named sheriff Buell R. Graves of Cullman County, but sheriff G. Wendell Roden was substituted by amendment on October 14, 1982.
[3] Regarding the claim against Aetna, see Ala. Code 1975, § 36-5-18, and Dixon v. American Liberty Ins. Co., 332 So.2d 719 (Ala.1976).