SHORES, Justice.
Joan B. Dick appeals from summary judgments in favor of Dr. C. Lawrence Ennis and Springhill Hospitals, Inc., d/b/a Springhill Memorial Hospital (hereinafter sometimes “Springhill”), in this medical malpractice case. We affirm.
The plaintiff claims that Dr. Ennis negligently diagnosed and treated her husband’s medical condition and that he died as a result of the negligent acts. She further asserts that Springhill is liable because Dr. Ennis was acting as its agent.
It is undisputed that on February 26, 1984, William J. Dick, Jr., the decedent, was admitted by Dr. Hall to Springhill Memorial Hospital for injuries he received in an automobile accident. He was treated for a fractured right leg, a concussion, and other injuries, and he remained in the hospital until March 9, 1984, when he returned to his home.
The parties also agree that Joan B. Dick, William Dick’s wife, and his two children took him to the emergency room at Spring-hill on the next evening, Saturday, March 10, because he was experiencing pain in his left leg. Dr. Hall told the Dicks to return to the hospital that evening after Mrs. Dick had contacted him about Mr. Dick’s symptoms. Mr. Dick did not wish to be taken to the hospital, and he went only at his family’s insistence.
Mr. Dick-was examined in Springhill’s emergency room by Dr. Ennis, who diagnosed early phlebitis of the lower left leg. Phlebitis is an inflammation of a vein. Dr. Ennis prescribed pain medication to alleviate the discomfort in his leg and ordered hot compresses to be placed on the left leg. He also directed Mr. Dick to contact his orthopedist in two or three days. Mr. Dick left the hospital that evening, without signing a form indicating that he was leaving the hospital against the medical advice of his physician (“AMA form”), although he and his wife signed another form located on the same page as the AMA form. Mr. Dick returned to the emergency room by ambulance the following evening, March 11, after he collapsed at home. Dr. Ennis also treated Mr. Dick on the night of March 11, but Mr. Dick suffered respiratory and cardiac arrest and died. The cause of death was a pulmonary embolism, a blood clot in the lung.
The basis for Mrs. Dick’s suit is her assertion that, on March 10, Dr. Ennis failed adequately to inform Mr. Dick of the serious nature of his medical condition and of his need to be hospitalized for immediate treatment. She contends that had Mr. Dick been properly informed, he would not have left the hospital against the advice of Dr. Ennis. Mrs. Dick further contends that there remains a question of fact whether Springhill is vicariously liable for the negligence of Dr. Ennis.
The depositions of Dr. Ennis; Mrs. Dick; Teresa Hahn, the decedent’s daughter; and Dr. Tad Lowdermilk, the plaintiff’s expert, were taken and were included in the record. Summaries of the relevant portions of these depositions follow.
Dr. Ennis testified that in March 1984 he was a member of a “rather loose partnership” of physicians who independently contracted to provide emergency room services *1036 at Springhill. Regarding Mr. Dick’s March 10 visit to Springhill’s emergency room, Dr. Ennis testified as follows: When he arrived at the hospital, Mr. Dick was smiling, friendly, and cooperative, and was not in acute distress. His primary complaint was of a sore left leg, and he told Dr. Ennis that he thought the rigorous physical therapy he had received at the hospital caused the pain in his leg. Dr. Ennis performed a complete physical examination, and upon examination of Mr. Dick’s left leg, he discovered no swelling, redness, or heat. He located no masses deep in the calf muscles, although he determined the calf was tender to deep palpation. Mr. Dick denied chest pain and shortness of breath.
Dr. Ennis testified that he told Mr. Dick that although there were no definite physical symptoms, Mr. Dick might be suffering from phlebitis. Dr. Ennis further testified that he explained to Mr. Dick what phlebitis is, and informed him that he believed Mr. Dick was at risk for the disease because he had recently injured his left heel and had been confined to a bed for a prolonged period. He further explained to Mr. Dick that a blood clot could form and migrate to his heart or lungs, and that the condition could be fatal. Dr. Ennis recommended hospitalization to Mr. Dick after he completed the examination and before Mrs. Dick entered the examining area. According to Dr. Ennis, Mr. Dick appeared to understand this information, but indicated he did not want to be admitted to the hospital.
Dr. Ennis further testified by deposition to the following: After detailing his concerns and his reasons for recommending hospitalization to Mr. Dick while they were alone in the examining area, Dr. Ennis then spoke with Mrs. Dick. He briefly explained to Mrs. Dick that although Mr. Dick believed he had sore muscles from physical therapy, Dr. Ennis was concerned that he had phlebitis and could develop a blood clot, which could dislodge and travel to his heart or lungs. He also indicated that Mr. Dick should be in the hospital if he had phlebitis. Mrs. Dick then expressed her concerns to Mr. Dick, who remained adamant in his refusal to be admitted to the hospital. Dr. Ennis telephoned Dr. Hall, Mr. Dick’s physician, who agreed that Mr. Dick should be hospitalized, but made the alternative treatment recommendations set out earlier in this opinion, in view of Mr. Dick’s refusal to be hospitalized. Dr. Ennis testified that he also told Mr. Dick that if he experienced chest pains or shortness of breath, he should return to the hospital or call his physician immediately. Dr. Ennis did not note on Mr. Dick’s record that he recommended hospitalization, nor did he request that Mr. Dick sign the AMA form stating that he was leaving the hospital against Dr. Ennis’s advice. Dr. Ennis explained that he asks patients to sign the AMA form only in obvious cases, and that, because Mr. Dick exhibited no clinical symptoms of a blood clot, this was not an obvious case.
In her deposition, Mrs. Dick testified that on the evening of March 10, Mr. Dick was reluctant to go to the emergency room, but she talked him into it. Mrs. Dick stated she left her husband alone with Dr. Ennis during the examination, and she admitted she does not know what conversations Dr. Ennis had with her husband outside her presence. She testified that, after examining her husband, Dr. Ennis told them that Mr. Dick had a problem, perhaps phlebitis, but they were lucky because it was below the calf. Mrs. Dick stated that she asked Dr. Ennis to keep her husband at the hospital, and Dr. Ennis responded that Mr. Dick did not want to stay at the hospital. Mrs. Dick once testified that Dr. Ennis informed her that he had urged her husband to stay at the hospital, but that he refused to stay; later in the deposition, however, Mrs. Dick stated that on March 10 she was unaware that Dr. Ennis wanted her husband to be admitted to the hospital. She testified that she heard the terms “blood clot” and “traveling” from Dr. En-nis, but that she was not informed that her husband’s condition was serious or life threatening; otherwise, she said she would not have taken her husband from the hospital. She testified that Dr. Ennis did not warn them to watch for symptoms such as shortness of breath and chest pains. Mrs. *1037 Dick also stated that her husband would not have left the hospital on March 10 if he had been told that phlebitis was serious.
Teresa Hahn, the decedent’s daughter, testified by deposition that on Saturday, March 10, she and her mother remained in the hospital’s waiting room for 30 to 45 minutes while her father was in an examining room. She stated that Dr. Ennis was vague in describing her father’s condition to them, but that it was possible that he mentioned the terms “clot” and “phlebitis.” Ms. Hahn stated that the physician did not indicate to her or to Mrs. Dick that Mr. Dick’s condition could be fatal. She testified that she did not believe that Dr. Ennis informed her father that he could develop a fatal blood clot and should be hospitalized, because her father did not convey this information to the rest of the family.
Dr. Tad Lowdermilk, the plaintiff’s expert, was also deposed. He testified that Dr. Ennis showed competence in arriving at the diagnosis of early phlebitis because this was a difficult case to diagnose. He stated that if Dr. Ennis told Mr. Dick on March 10 that he needed to be in the hospital and explained to him the risks of going home, then it would be his opinion that Dr. Ennis did not deviate from the appropriate standard of care. Dr. Lowdermilk stated that he did not find a notation in Mr. Dick’s record indicating that Dr. Ennis recommended hospitalization on March 10. He also stated that he would “find no fault if Dr. Ennis had in fact informed Mr. Dick of the risks of refusing hospitalization but simply had failed to note it in Mr. Dick’s record.
Dr. Ennis moved for summary judgment, pointing out that in his deposition he had testified that he advised Mr. Dick of the possibility of a blood clot and had recommended hospitalization, and arguing that, because Mrs. Dick produced no evidence to show that Mr. Dick was not so advised, summary judgment was proper. Springhill moved for summary judgment, relying on the deposition testimony of Dr. Tad Low-dermilk, the plaintiff’s expert, that the treatment provided by Springhill’s nursing staff did not deviate from the appropriate standard of care.
In its order granting Dr. Ennis’s motion for summary judgment, the court correctly found that once Dr. Ennis filed his motion (which was supported by excerpts from his deposition indicating that he did advise Mr. Dick of the risk of a blood clot and the need for hospitalization, and excerpts from the deposition of the plaintiff’s expert indicating that Dr. Ennis did not deviate from the appropriate standard of care if he advised Mr. Dick that he should be hospitalized and treated), Mrs. Dick had the burden of coming forward with at least a scintilla of evidence that the doctor did not advise Mr. Dick to be hospitalized. The court further found that the evidence Mrs. Dick put forth was mere speculation and conjecture, and, therefore, that she had not met the burden. The court also granted Springhill’s motion for summary judgment, but did not file a written order explaining its reasons.
It is well established that summary judgment is properly granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All of the evidence must be viewed in the light most favorable to the nonmoving party, and if there is a scintilla of evidence supporting the position of the nonmoving party, summary judgment cannot be entered. Oliver v. Townsend, 534 So.2d 1038, 1040 (Ala.1988).
The sole issue in this case is whether, on March 10, Dr. Ennis advised Mr. Dick that he should be hospitalized and that his refusal to be admitted to the hospital could have fatal consequences.
Dr. Ennis testified that he recommended hospitalization to Mr. Dick after explaining his diagnosis and his concerns regarding the possible formation of a blood clot. Dr. Ennis also stated that he informed Mr. Dick that a blood clot could be fatal. Mrs. Dick has failed to put forth any facts to show that Dr. Ennis did not inform Mr. Dick fully. Rather, Mrs. Dick and her daughter conceded that Dr. Ennis was alone with Mr. Dick during the time *1038 Dr. Ennis stated he conveyed this information to Mr. Dick. Mrs. Dick and her daughter also admitted that they have no knowledge of the substance of the conversations Dr. Ennis had with Mr. Dick while the two were alone.
Mrs. Dick emphasized that Dr. Ennis did not adequately explain the seriousness of Mr. Dick’s condition to her or to her daughter. However, whether Mrs. Dick and her daughter believe they were adequately informed by Dr. Ennis is irrelevant. Mrs. Dick also focuses much attention on the unsigned AMA form and the lack of any notation in Mr. Dick’s medical record indicating that hospitalization was recommended by Dr. Ennis and refused by Mr. Dick. This evidence in no way supports Mrs. Dick’s allegation that Dr. Ennis failed to advise Mr. Dick fully. In fact, the plaintiff’s expert testified that if Dr. Ennis recommended hospitalization to Mr. Dick and advised him of the risks of refusing, but simply failed to note this information in the medical record, he would conclude that Dr. Ennis was not negligent.
Mrs. Dick repeatedly asserts that Dr. Ennis must not have informed her husband fully, because, if he had, her husband would have discussed his illness with his family and would not have refused admission to the hospital on March 10. These assertions are nothing more than speculation and conjecture, unsupported by any evidence in the record. Speculation, conjecture, and conclusory allegations cannot be used to create a genuine issue of material fact where one does not already exist. Bogle v. Scheer, 512 So.2d 1336, 1340 (Ala.1987). The trial court correctly determined that Mrs. Dick failed to present even a scintilla of evidence in support of her claim. The summary judgment in Dr. Ennis’s favor was, therefore, properly entered, and it is hereby affirmed.
Mrs. Dick argues that Springhill is vicariously liable for Dr. Ennis’s negligence. Inasmuch as we are affirming the summary judgment entered in favor of Dr. Ennis, Springhill can have no vicarious liability. Accordingly, the summary judgment entered in favor of Springhill Hospital is also affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.