The plaintiffs, Jeanette Coleman and William Coleman, appeal from a summary judgment in favor of defendant Bessemer Carraway Methodist Medical Center ("Carraway") on claims of negligence. We affirm.
In November 1985, Jeanette Coleman was provided medical care by Dr. Jorge Caceres and Dr. E.A. Isabell at Carraway's medical facility. Prior to her surgery there, Mrs. Coleman's treating physician, Dr. Windsor, had ordered a CAT scan because of her complaint of migraine headaches. The radiology report of October 21, 1985, noted that "no lesion is seen within the brain itself" and indicated a soft tissue mass in the sinuses, suggesting a sinus tumor.
Dr. Windsor consulted with Dr. Caceres regarding the sinus tumor, and a series of tests was performed on October 23, 1985. Dr. Caceres and Dr. Isabell saw Mrs. Coleman several times in their office before the scheduled endoscopic nasal surgery on November 8, 1985. Dr. Isabell was to perform the surgery to remove the tumor, and he assured Mr. Coleman that he was qualified to do so. The plaintiffs were informed that Dr. Isabell had recently been trained to do this surgery and that he would get the necessary instruments, because Carraway did not have them. Dr. Isabell's training included a laboratory course at Johns Hopkins Medical School, where he practiced micro endoscopic procedures. Although he had had no experience with a live human being, the plaintiffs' expert otolaryngologist, Dr. Rand, had no criticism of Dr. Isabell's training. Dr. Caceres had read articles on the procedure and had reviewed Dr. Isabell's instructional materials.
On November 7, 1985, Mrs. Coleman was admitted to the hospital, and she signed a medical consent form relating to "endoscopic nasal surgery." Mrs. Coleman's preoperative diagnoses included "sinusitis" and a "cyst on CAT scan near sphenoid." The plaintiffs allege that before the surgery, there were notations on the charts *Page 705 
with regard to "nasal polyp with intracranial origin." The surgery was performed on November 8, 1985, by Dr. Isabell, and Dr. Caceres assisted.
Dr. Isabell performed a biopsy of the mass, and the pathologist, Dr. Reinhardt, reported to the doctors during the procedure that the mass was "benign neural tissue (glioma?)." Mrs. Coleman was discharged on November 10, 1985, and the discharge summary notation written by Dr. Caceres stated that the "final pathological findings were brain tissue."
Following Mrs. Coleman's discharge, her condition worsened, and she returned to the emergency room at Carraway on November 13, 1985. A CAT scan was performed on her at that time, which revealed evidence of intracranial bleeding. Mrs. Coleman was transferred to Brookwood Medical Center on November 13, 1985; she had paralysis to the right side of her body and was unable to speak. Mrs. Coleman later had to undergo neurosurgery.
The plaintiffs filed their complaint on September 17, 1987, contending that Dr. Isabell, Dr. Caceres, and Carraway were negligent and/or wanton in the medical care and services provided to Mrs. Coleman. On April 13, 1989, Carraway filed its motion for summary judgment, supported by affidavits. On February 20, 1990, the circuit judge entered a summary judgment on behalf of Carraway. This judgment was not certified as final pursuant to Rule 54(b), A.R.Civ.P., and thus remained subject to modification or alteration by the trial court.
In June 1990, the plaintiffs and Dr. Isabell and Dr. Caceres reached a settlement during the third week of trial. The plaintiffs then filed a motion to vacate the summary judgment that had been entered on behalf of Carraway. In July 1990, the circuit court judge dismissed with prejudice the defendant doctors, thereby making Carraway's summary judgment final. Rule 54(b); Morton v. Chrysler Motors Corp., 353 So.2d 505
(Ala. 1977). On October 23, 1990, the circuit court judge denied the plaintiffs' motion to vacate the summary judgment, finding, after hearing testimony for more than two weeks, that "there is not a scintilla of evidence that produces a genuine issue of material fact." The plaintiffs brought this appeal.
This case is governed by the "scintilla" rule because the alleged act occurred before June 11, 1987. §§ 6-5-54a and6-5-552. On June 11, 1987, Alabama enacted the Medical Liability Act, codified as Alabama Code 1975, § 6-5-540.
 "This article applies to all actions against health care providers based on acts or omissions accruing after June 11, 1987, and as to such causes of action, shall supersede any inconsistent provision of law."
Alabama Code 1975, § 6-5-552.
Pursuant to Rule 56, A.R.Civ.P., the standard of review is whether there was any genuine issue of material fact and, if not, whether Carraway was entitled to a judgment as a matter of law. The evidence must be viewed in the light most favorable to the nonmoving party, and a summary judgment can not be affirmed if there was a scintilla of evidence supporting the position of the nonmoving party. Dick v. Springhill Hospitals, Inc.,551 So.2d 1034, 1037 (Ala. 1989). In determining whether there was a genuine issue of material fact, the appellate court is limited to reviewing the factors and the evidence considered by the trial court when it entered the summary judgment. Purvis v. PPGIndustries, 502 So.2d 714, 716 (Ala. 1987).
Thus, the sole issue in this case is whether, based on the facts before the trial court when the summary judgment motion was granted, there was a genuine issue of material fact and, if there was not, whether Carraway was entitled to a judgment as a matter of law.
The plaintiffs argue for the adoption of the "corporate negligence" doctrine, and claim that they have submitted more than a "scintilla" of evidence that defendant Carraway was negligent in its policies and procedures and in granting certain staff privileges. Under this doctrine, a hospital has a duty to assure the competence of its medical staff through its privileges, *Page 706 
selection, and review processes, and through supervision under certain circumstances. Insinga v. LaBella, 543 So.2d 209
(Fla. 1989). The facts in the present case show that Carraway was not negligent in its policies and procedures and in granting staff privileges to Dr. Caceres and Dr. Isabell; furthermore, Carraway met its duty to assure the competence of Dr. Caceres and Dr. Isabell. Therefore, the corporate negligence doctrine does not apply to the facts of this case.
In Carraway's "Medical Staff Bylaws, Rules and Regulations," the granting of its privileges is based upon the physician's education, training, experience, demonstrated competence, and references. Both Dr. Caceres and Dr. Isabell were granted otolaryngology privileges at Bessemer Carraway Medical Center, and their privileges included endoscopy. Under procedures established at the hospital, every two years physicians are required to reapply for privileges, and, if they fail to reapply, their staff privileges are terminated. In addition, Carraway is accredited by the Joint Commission on Accreditation of Hospitals (JCAH), an organization that reviews the policies, procedures, and privileges of medical staff members and sets standards for hospitals.
The plaintiffs are asking this Court to impose a duty on defendant Carraway "to supervise its physicians and know with some degree of certainty what exactly [is] being performed in [the] operating room." A hospital's standard of care does not require this degree of certainty and supervision. Alabama imposes upon a hospital a duty to use "that degree of care, skill and diligence used by hospitals generally in the community." Alabama Code 1975, § 6-5-484. The word "community" in this cause in Alabama means the national hospital community.Lamont v. Brookwood Health Services, Inc., 446 So.2d 1018 (Ala. 1983). Carraway made a prima facie showing that it adhered to that community standard, which plaintiffs did not rebut. Even the plaintiffs' expert, Dr. McHugh, testified that Carraway's rules, bylaws, and procedures were "well written, as a matter of fact."
There are no facts to support plaintiffs' assertion that, prior to Mrs. Coleman's surgery, there were notations on the charts with regard to "intracranial origin." The information on Mrs. Coleman's hospital charts prior to surgery listed the procedure as being "endoscopic nasal surgery." Dr. Isabell's affidavit stated that the comments regarding "intracranial origin" were added to the charts after the surgery had been performed.
Carraway made a prima facie showing that it had not acted negligently in regard to Mrs. Coleman's surgery. The plaintiffs did not rebut that showing. Accordingly, the summary judgment in favor of Bessemer Methodist Carraway Medical Center is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.